CHIEF AVA VILI for HIMSELF and the
AVA FAMILY of PAVA'IA'I, Plaintiffs

v.

FOMA'I P. LOGOAI, FAALILIU P. LOGOAI
and Her CHILDREN, Defendants

AVA V. AVA, Plaintiff

v.

MIKE McDONALD, Defendant and Cross-Claimant

v.

FOMA'I P. LOGOAI, Cross-Defendant

High Court of American Samoa
Land and Titles Division

LT No. 32-90
LT No. 36-90

September 3, 1992

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate.
Judge, and MAILO, Associate Judge.

Counsel:          For Plaintiffs, Tauese P.F. Sunia
For Defendant and Cross-Defendant Foma'i P. Logoai
and Defendants Faaliliu P. Logoai and her
children, Asaua Fuimaono
For Defendant and Cross-Claimant Mike McDonald,
William H. Reardon

This amended opinion and order is issued in response to Mike McDonald's motion for reconsideration of or new trial on his cross-claim against Foma'i P. Logoai. This motion was heard and granted on August 21, 1992.

## AMENDED OPINION AND ORDER

The Ava initiated the action in LT No. 32-90 for himself and the Ava family in June 1990 to declare the registration of a portion of the land called "Lalofutu" in the Village of Pava'ia'i, American Samoa, by the Logoais as individually owned land of Faaliliu P. Logoai and her children null and void, and to recognize this land as the communal land of the Ava family. He commenced the action in LT No. 36-90 later in June 1990 to enjoin further construction or other encroachment by Mike McDonald on a part of the registered land leased by McDonald and his wife from the Logoais. McDonald counterclaimed for damages against the Ava for unjust enrichment, should the Ava prevail. McDonald also cross-claimed against his lessor Foma'i P. Logoai for damages and to quiet title. The actions were consolidated.

On February 5, 1991, the Logoais filed a motion for summary judgment, which was heard on February 28, 1991, and denied on May 8, 1991. The motion was based on the contention that the Certificate of Registration of the title to the land, issued pursuant to A.S.C.A. §§ 37.0101 *et seq.* by the Territorial Registrar in 1984 to Faaliliu and her children as their individually owned land, was conclusive. This title registration was accomplished through this Court's order in an action entitled "In the Matter of the Application by: Fa'aliliu P.S. Logoai and Children, Applicants," LT No. 19-77, in which it was alleged that the land was Ava land and the applicants were Ava family members. The action in 1977 sought and obtained the Court's order permitting survey of the land after the Ava's alleged obstruction of this process. However, since the survey on its face was neither dated nor fully certified, and furthermore lacked an accompanying surveyor and pulenu'u certificate, the title-registration process was not completed until Foma'i P. Logoai

66

obtained the Court's order directing *nunc pro tunc* dating and registration in 1984. The 1977 action did not name the Ava or anyone else as defendants, and the proceedings in 1977 and 1984 were entirely *ex parte*. In denying the motion for summary judgment, the Court ruled that the serious irregularities in the 1977 action, shown on the face of the registration documents, overcame the evidentiary presumption from the title registration of ownership of the land by Faaliliu P. Logoai and her children before the registration and could not prevent the Ava from litigating the issue of this ownership in the present actions. *See Ifopo v. Siatu'u*, 12 A.S.R.2d 24 (1989); *Faleafine v. Suapilimai*, 7 A.S.R.2d 108 (1988); *Solomona v. Governor of American Samoa*, 17 A.S.R.2d 186 (1990).

The present actions came regularly for trial on January 16 and 17, 1992. After the plaintiffs completed the presentation of their case, the defendants moved for dismissal on two grounds: first, the lack of a certificate of irreconcilable dispute issued by the Secretary of Samoan Affairs, pursuant to A.S.C.A. § 43.0302, on file with the Court, and second, the lack of the plaintiffs' standing to sue in that the evidence demonstrated that the land at issue was originally under the pule or control of the Pagofie title rather than the Ava title. The Court, in its discretion under T.C.R.C.P. 41(b), declined to render any judgment until the close of all the evidence.

Strictly, these actions should not have been commenced without an accompanying certificate of irreconcilable dispute, but the time of filing is a procedural requirement that may be corrected by a later filing before judgment. However, failure to file this certificate at all deprives the Court of jurisdiction to render a decision. Thus, on February 19, 1992, plaintiffs were ordered to file a certificate, in conformance with A.S.C.A. § 43.0302, within 60 days or face dismissal of their actions.

The 60-day period was designed to afford adequate time to hold the required two appearances, each on at least 20 days' notice, before the Secretary or his deputy before the certificate can be issued. In fact, the second hearing on April 23, 1992, and the issuance and filing of the certificate on May 4, 1992, took place after the 60-day period. For purposes of proceeding to determine these actions on their merits, however, we consider the certificate to have been filed in substantial compliance with the Court's order of February 19, 1992.

## A. FINDINGS OF FACT

We first summarize the several witnesses' testimony as a prelude to finding the essential, ultimate facts.

1. *Ava Vili's Testimony.* The Ava is 64 or 65 years old. He succeeded to the Ava matai title in 1970. At that time, he had been living in California for a number of years. He went there in 1947 and returned permanently to American Samoa with his family in 1973.

The land "Lalofutu" in the Village of Pava'i'ai, American Samoa totals approximately 25 acres and includes the 2.69 acres, more or less, at issue. "Lalofutu" was first occupied by a couple in the Ava ancestral family. Their cultivation was principally below the portion of the land at issue towards the Village proper. This couple had four children, two sons and two daughters. The children of one of the daughters included two brothers who were, respectively, the Ava's father and Faaliliu's father. Thus, according to the Ava, both he and Faaliliu are Ava family members, and "Lalofutu" is communal land of the Ava family. All surrounding lands are communal lands of other families.

The Ava's father also held the Ava title, while Faaliliu's father held the Pagofie title. Both titles are matais of the same family. Ava communal lands are under the pule of both titles in the sense that both matais, when contemporaneously filled, consult with each other before Ava communal land transactions take place, but such lands, including "Lalofutu," are Ava, not Pagofie, communal lands. There have been no Ava-authorized surveys or title registrations of Ava communal lands, other than a sale of a portion of such lands for church premises for $9,000 in 1983, under an earlier commitment by his father as the Ava and Faaliliu's father as the Pagofie.

Although long occupied by the Ava family, "Lalofutu" was not significantly developed until 1942. The Ava, along with his father, mother and brother, then began to clear the land in earnest. They worked the land almost daily. An Ava family couple was also authorized to live within the land at issue in that year. Another Ava couple replaced this couple in the same location in 1947. The Ava's father was involved in a shooting incident on "Lalofutu" in 1948. As one result, his father instructed the Ava never to live on this land himself, about which his mother reminded him years later when he had cinders hauled there, intending to build his house. "Lalofutu" was vacant of any residents when his father died in 1964.

68

Faaliliu's father and his immediate family, including Faaliliu, moved to the Manu'a Islands in 1930 or 1931. He returned in 1933 and died of tuberculosis about one month later. The Ava does not recall that Faaliliu or any of her siblings were able to attended their father's funeral. Faaliliu and her immediate family were actually still living in the Manu'a Islands in 1948 at the time of the shooting incident.

A daughter of the present Pagofie told the Ava in 1977 that Faaliliu was having the land at issue surveyed. He stopped the survey, telling the surveyor that he would ruin the surveyor's equipment if the survey was not stopped. He thinks that the survey was completed the next day, but in any event it was done without his knowledge.

The Ava was unaware of Faaliliu's court action in 1977 or the follow-up in that action in 1984. At no time did he see or otherwise become aware of any announcement by the Pulenu'u of Pava'i'ai, or any village chiefs' meeting, or any notice, or the posting thereof, concerning the survey and title registration of the land at issue.

During the Ava's testimony, reference was made to seven other transactions of public record affecting "Lalofutu." All seven described the land as Pagofie communal land and involved separation agreements to convert proposed residences to be constructed on "Lalofutu" to personal property of the building owner, in accordance with A.S.C.A. §§ 37.1501 et seq. Three occurred between 1964 and 1970 when the Ava title was vacant. One of the other four also involved title registration under A.S.C.A. §§ 37.0101 et seq., as individually owned land. The Ava disclaims knowledge of six of the seven transactions, stating no buildings were constructed as a result of them. The remaining transaction was a separation agreement, not involving title registration, in 1983, which the Ava signed on behalf of the Pagofie family. According to the Ava, he signed this separation agreement following joint approval by both the Pagofie, who was unavailable to sign, and himself.

With respect to Mike McDonald, the Ava has known him since his arrival in American Samoa and during their respective participation in the construction business here. Although he drove by "Lalofutu" almost daily, he thought that the shop, McDonald's first building, actually belonged to Foma'i and did not stop its construction. He saw McDonald pouring the concrete foundation for a second building and told McDonald to stop. McDonald refused, claiming it was on Foma'i's land. The action against McDonald was filed about one month later.

69

2. *Faaliliu's Testimony.* Faaliliu was born in 1924 and is now 67 years of age. Her father was the eldest of two sons of a previous Ava, and held the Pagofie title. He was the first person to clear "Lalofutu," with the help of his wife and brothers, beginning in 1934, and to name the land. She is not familiar in any respect with the couple who the Ava claims first cultivated "Lalofutu." According to Faaliliu, "Lalofutu" is Pagofie communal land, other than the portion given to her as her individually owned land. Except for the cinders-excavation incident described below, no Ava has ever exercised, or attempted to exercise, pule over "Lalofutu," and no one has lived there under any Ava's authority. She recognizes the present Ava as the senior matai of the Ava family but denies that he has any pule over "Lalofutu."

In 1937, when she was 13 years old, her family moved to the Manu'a Islands. Her father died the following year, in 1938. Before he died, he, as the Pagofie, gave her the land at issue as her individually owned land. This gift was made in the presence of the Ava's father, who was the Ava at that time. Her father was living in Pava'i'ai proper then and was using "Lalofutu," although there were as yet no plantations there.

In 1940, when Faaliliu was age 16, she married a Manu'an. She remained in the Manu'a Islands until she returned to the Island of Tutuila, initially in 1955 and permanently in 1958, to live on the land at issue according to her father's earlier instructions and wishes. There was no one living on the land at issue in 1955. Since then, the only homes on the land at issue, other than her home, have been those of her children and sister. Her husband and a niece are buried there, solely by her authority. The couple moving onto "Lalofutu" in 1942 and others thereafter lived elsewhere within "Lalofutu" and not on the portion at issue. Likewise, the 1948 shooting incident occurred outside the area she claims to own. She also pointed out that when the road up the mountain from Pava'i'ai to Aloau was constructed in 1963-1964, passing immediately adjacent to the land at issue, she first objected, but withdrew her objection when the Pagofie at that time advised her to let road go through "Lalofutu" and along her land.

The only dispute between her and the present Ava came in 1977. She objected to the removal of cinders, which the Ava had authorized, from an area on the ocean side of her house. He did not object to her survey of the land at issue at that time. She thought that the survey had been completed and the 1977 court action was brought to stop the excavation of cinders, not to permit the survey. She did not know either

70

that the true nature of her petition was to compel the survey, or that the petition described the land at issue as Ava communal land.

The 1977 petition was filed with the Court as an *ex parte* action by an attorney. The attorney was acting on information furnished by Faaliliu or another on her behalf. Faaliliu signed the petition, which alleges that she and her children are blood members of the Ava family, the land at issue is Ava communal land assigned to their use by Ava Lafoia (the present Ava's father), and the Ava as the present senior matai of the family had stopped their survey of the land at issue. The prayer specifically requested an *ex parte* order allowing the survey to proceed. The Court's order of May 6, 1977, authorized the survey to continue and directed the title-registration process to proceed pursuant to law.

3. *Foma'i's Testimony*. Foma'i is Faaliliu's son. He was born in 1952 and is now 39 years old. He was born in the Manu'a Islands but has lived on the land at issue, beginning either in 1958 or 1962 until 1972, when he joined the U.S. Marine Corps, and since 1984, when he completed his military service. This land was given to his mother by his grandfather Pagofie. When he moved to the land, only his part of the family was cultivating any portion of "Lalofutu." Only Faaliliu's plantations were on the land at issue since he first lived there.

"Lalofutu," including the land at issue, is Pagofie land in origin. No Ava was asked for permission to register the land at issue as Faaliliu's individually owned land. This permission is unnecessary for Pagofie land. He was not here in 1977. However, he understood that the 1977 court action was initiated to peacefully resolve the Ava's objections, when the present Ava threatened Foma'i's mother about surveying the land at issue.

After returning in 1984, he checked with the Territorial Registrar's Office on the status of the title registration of the land at issue. He learned from the Assistant Territorial Registrar that the title had not been registered as Faaliliu's individually owned land, because the Territorial Registrar could not register a title based on a survey which was undated and not signed by the surveyor. The Assistant did not say anything about a pulenu'u certificate. He was advised by the Registrar to obtain either a new survey or this Court's order to register the title. He then presented to this Court Faaliliu's affidavit, dated September 14, 1984, stating, in essence, that the 1977 survey lacked a date, precluding the title's registration without this Court's order, and received this

71

Court's order to date the survey *nunc pro tunc* and register the land at issue.[1]

There was an incident in 1989 when the Ava had a load of cinders delivered to the land at issue for construction of the home of the Ava's sister. Foma'i stopped the unloading. The Ava arrived about ten minutes later. Despite threats, a meeting was scheduled the following Sunday, at which the Ava agreed that his sister's home would be built on a portion of "Lalofutu" across the road from the land at issue.

Regarding McDonald, Foma'i was first aware of the Ava's objection to his presence when McDonald started his second building. The Ava did not take up his objection with Foma'i directly, even when the controversy of this action was discussed at the office of the Secretary of Samoan Affairs (prior to the trial and before the Court's order of February 19, 1992).

4. *Assistant Territorial Registrar's Testimony.* Pelema Kolise, who was then the Assistant Territorial Registrar, recalls being approached about the title registration of the land at issue in 1984. He does not specifically recall that Foma'i was the person who came to his office to discuss the registration. The registration had been rejected up to that time, because the survey was not dated and certified by the surveyor. So long as these defects were not corrected, the registration process could not proceed without this Court's order. However, he does not recall advising the person who approached him on what to do to complete the title registration.

He believes the person who approached him came three times, the third time with this Court's order to register the title to the land at issue as the individually owned land of Faaliliu and her children. He has seen in his experience more than 100 court orders to register titles to land. The order in this case was peculiar since no trial took place before its issuance. Normally, a surveyor and pulenu'u certificate is necessary, and Faaliliu's affidavit does not cover this point. However, he acted

---

[1] While the Court's order provides for a *nunc pro tunc* date of May 7, 1979, it is probable that the Court intended the date to be May 7, 1977, the day after the Court's order of May 6, 1977, permitting the survey. In any event, the copy of the survey on file with the Territorial Registrar still bears only the surveyor's undated signature. The approval for registration remains undated and unsigned.

72

upon the Court's order of September 20, 1984, as authority to register the title to the land at issue.

The offer for registration of the land at issue as the individually owned land of Faaliliu and her children was signed by Foma'i on Faaliliu's behalf and filed with the Territorial Registrar on September 20, 1984. The Notice for Proposed Registration of Land was issued by the Registrar on the same day. The Affidavit of Posting, signed by Kolise on November 19, 1984, shows that the notice was posted at the Court House and on two telephone poles in Pava'ai'i from September 20 through November 19, 1984. The Certificate of Registration, issued by the Registrar, certifies that title to the land at issue was registered as the individually owned land of Faaliliu and her children on November 29, 1984. The survey filed with the certificate of Registration is signed by the surveyor but, despite the Court's order of September 20, 1984, is still undated. In addition, there is no surveyor and pulenu'u Certificate on file with the Registrar.

There are no Territorial Registrar's records for lands registered under the Ava family name.

Contrary to the allegation in plaintiffs' complaint, Kolise is not related to Faaliliu and her children.

5. *McDonald's Testimony.* McDonald is a carpenter by trade and has about 25 years of experience in the construction business.

He negotiated the lease of approximately .22 acres within the land at issue with Foma'i. The term of the lease is 20 years, beginning November 6, 1989, and ending November 5, 2009. The rent for the first five years, $9,000, is payable and was paid in advance. The rent for the remaining 15 years is $150 per month. All improvements revert to the landowner at the end of the lease. The lease was signed by Foma'i as lessor and McDonald and his wife as lessees on November 6, 1989. The McDonalds took possession immediately.

He first learned of the Ava's objection to the lease some seven months later. The objection surprised him. He had known the Ava as a fellow member of the local construction business community for years. The Ava had seen him almost daily during his construction activity on the leased land and had said nothing about this activity. By the time of the Ava's objection, he had constructed a shop, installed a septic tank, and started the foundation for a house on the leased area.

73

McDonald's investment in the leasehold consists of $15,680 for the shop building, according to his estimated construction cost of $13 per square foot, $2,000 for the septic tank, and $5,000 for the house foundation, for a total of $21,560. In addition, he has paid $9,550 in rent, including the original advance and a later advance, to Foma'i.

## Resolution of Evidentiary Conflicts

There are several factors that we consider persuasive in resolving the conflicts in the various testimonies and finding the essential, ultimate facts.

First, with the possible exceptions of the land at issue and one other parcel, both within "Lalofutu," this area of Pava'ia'i, including "Lalofutu" and the lands surrounding it, are communal lands of various families. "Lalofutu" is clearly communal land in origin.

The seven transactions in evidence of portions of "Lalofutu" other than the land at issue, including the separation agreement executed by the Ava, again with the two possible exceptions noted above, certainly indicate that "Lalofutu" was and is Pagofie communal land. On the other hand, the fact that a Pagofie executed the documents in six of these seven transactions, particularly when the Ava executed the document in one of them, is not necessarily inconsistent with the Ava's testimony that the Ava and the Pagofie, when both titles are filled, exercise a form of joint pule over Ava communal lands. It may be the family's practice for the Pagofie to execute the formal documents of these transactions, or it may be that the Ava was genuinely unaware of the six transactions of which he disclaims knowledge. Three of these transactions occurred when the Ava title was vacant. Furthermore, no testimony by a knowledgeable matai of the Pagofie family was offered to contradict the Ava's testimony. The Ava's testimony as a whole was, in our opinion, cohesive and convincing.

Faaliliu's testimony, however, that her father, as the Pagofie and with the concurrence of the Ava's father as the previous Ava, gave her and her children the land at issue as their individually owned land, when she was at most 14 years of age and unmarried, is incredulous. At most, these two earlier family titleholders might have made a commitment that the land at issue would be assigned to Faaliliu's use in the future, much like their commitment to sell a portion of Ava communal land for church purposes, but that in her case the land would remain communal land.

74

Faaliliu and her immediate family did later move onto and cultivate the land at issue without objection, until she sought to survey and register title to this land in 1977 as the individually owned land of herself and her children. Her children were probably included in her claim to the land at this time. Their occupancy then continued after 1977 without objection, as the Ava apparently thought he had successfully prevented the title registration proposed in 1977, until the Ava first learned about the title registration well after the registration was accomplished in 1984.

Most important are the admissions in the petition filed with the Court in 1977 that the land at issue is Ava communal land assigned to Faaliliu and her children for their use, Faaliliu and her children are blood members of the Ava family, and the Ava was objecting to the survey. This petition was signed by Faaliliu and her attorney. The petition must have been prepared by the attorney based on information provided by Faaliliu or some knowledgeable person on her behalf. Of similar importance is the *ex parte* nature of the 1977 court action, both in that year and in 1984 when the title registration was completed, in the face of the Ava's announced objections to the survey.

Finally, it is noted that the documentation supporting the title registration remains defective. The survey is signed by the surveyor and implicitly dated *nunc pro tunc* by court order. However, the customary approval for registration on the survey itself has still not been completed. Moreover, an accompanying surveyor and pulenu'u certificate, which evidences compliance with and is mandated by A.S.C.A. § 37.0102(c), is still lacking.

We find that the essential ultimate facts are as follows:

1. The land at issue is Ava communal land.

2. Neither an Ava nor a Pagofie, either collectively or singularly when in office, authorized registration of the title to the land at issue as the individually owned land of Faaliliu and her children or of Faaliliu alone.

3. The land at issue was assigned to Faaliliu for the use of herself and her immediate family but remained Ava communal land.

75

4. Neither an Ava nor a Pagofie, again either collectively or singularly when in office, authorized the lease of a portion of the land at issue to the McDonalds.

5. McDonald has paid Foma'i $9,550 in rent for the leased land, including a payment of $9,000 for the first five years of the lease and another advance of $550.

## B. CONCLUSIONS OF LAW

We reach conclusions of law as follows:

1. The registration of the title to the land at issue as the individually owned land of Faaliliu and her children is invalid and is canceled.

2. The lease of a portion of the land at issue to the McDonalds is likewise invalid and is canceled.

3. The Ava, for himself and on behalf of the Ava family, has been unjustly enriched as a result of the invalid McDonald lease and must pay to McDonald the damages McDonald suffered in constructing improvements to the land in the sum of $21,560. Since the Ava never received any of the rent paid for the lease, McDonald cannot recover these sums from the Ava.

4. McDonald shall recover the unused portion of the rental advances, totaling $4,652.86, from his lessor Foma'i. McDonald is not entitled to have title quieted.

5. McDonald's money judgments shall bear post-judgment interest at the statutory rate of 6% per annum.

6. This decision implicitly rules against the defendants' motion to dismiss on the grounds that the Ava lacked standing to sue, and that motion is denied.

Judgment shall be entered accordingly.

It is so ordered.

(Dated as of July 27, 1992.)